**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KARON OLUFEMI BLALOCK,<br><br>   Defendant. | Criminal Action No. 23-73-15 (CKK) |

**MEMORANDUM OPINION**
(March 4, 2024)

Defendant Karon Olufemi Blalock is charged by indictment with conspiring to distribute, with others, thousands of counterfeit pills of fentanyl.  On November 16, 2023, Magistrate Judge Robin M. Meriweather of this jurisdiction ordered Defendant detained pending trial.  Before the Court is Defendant's [257] Motion for Review of Magistrate Judge's Detention Order ("Motion" or "Mot.").  Defendant requests that the Court review Magistrate Judge Meriweather's detention order and release him on pretrial conditions.  Mot. at 1, 3–4.  Upon consideration of the pleadings,[1] the relevant legal authority, and the record before the Court, the Court shall **DENY** Defendant's [257] Motion for Review of Magistrate Judge's Detention Order.

## I.   BACKGROUND

### A.  Procedural Background

On March 9, 2023, the Government filed an indictment against Defendants Hector David Valdez, Craig Eastman, and Charles Jeffrey Taylor.  ECF No. 1 (sealed).  Additional defendants were indicted on April 26 and May 18, 2023.  ECF No. 25; ECF No. 74  On November 6, 2023, a

---

[1] The Court's consideration has focused on:
- Defendant's Motion for Review of Magistrate Judge's Detention Order, ECF No. 257; and
- The Government's Opposition to Defendant's Motion for Review of Detention ("Gov't Opp'n"), ECF No. 260, and exhibits therein.

grand jury returned a third superseding indictment, adding, among others, Defendant Blalock.  ECF No. 134 (sealed).  On November 17, 2023, a grand jury returned a fourth superseding indictment— the operative indictment—in this matter.  ECF No. 174.  Following the third superseding indictment, Magistrate Judge Meriweather issued an arrest warrant for Defendant, which was executed on November 13, 2023.  ECF No. 148.  That same day, Defendant appeared before Magistrate Judge Meriweather, who ordered Defendant to be temporarily detained (for three days).  *See* Minute Entry (Nov. 13, 2023).  On November 16, 2023, Defendant appeared for a detention hearing before Magistrate Judge Meriweather, who ordered Defendant to be detained pending trial.  *See* Minute Entry (Nov. 16, 2023).

Defendant subsequently filed the pending Motion on February 5, 2024, requesting the Court to review Magistrate Judge Meriweather's detention order and set conditions of release.  ECF No. 257.  The Government opposes Defendant's motion, filing its opposition on February 20, 2024.  ECF No. 260.

### B.  Factual Allegations

In its opposition, the Government details the allegations against Defendant, including messages exchanged between Defendant and two co-defendants in this case, as well as additional messages from another individual on social media indicating that Defendant was distributing illicit drugs.  Broadly, the Government alleges that Defendant was a "prolific distributor of pills." Gov't's Opp'n at 21.

To support its claims, the Government recounts purported messages between Defendant and co-Defendant Valdez.  *Id.* at 15–17.  For example, on September 23, 2022, Valdez messaged Defendant, stating, "I can give you a better ticket too."  *Id.* at 15.  Defendant responded, "When I'm ready leave me alone" and "Ite bet."  *Id.*  Valdez then stated: "75 cents and okay bet my bad."

2

*Id.*



*See id.* at 15.  The Government proffers that the above exchange demonstrates Valdez offering to sell pills to Defendant for $0.75 each.  *Id.*  On December 10, 2022, Valdez messaged Blalock again, stating, "When you need more pops," "I got you at 50 cents," and "Fire ones."  *Id.* at 15–16.



*Id.* at 16.  The Government claims that this exchange indicates that Valdez offered Defendant pills for $0.50 each and that the "pills were of high quality."  *Id.*  On January 18, 2023, Valdez again messaged Blacklock, this time stating: "I can do blues at 48 cents now," meaning Valdez lowered the price for the pills once again.  *Id.*

In addition to text messages with Valdez, the Government states that Defendant communicated with some of the co-defendants in this case via social media as well.  *See id.* at 18. For instance, on September 19, 2022, Valdez offered to sell pills to Defendant at a cheaper price. *Id.*

**Author**  lilcurl.b (Instagram: 50311716672)
**Sent**  2022-09-19 18:25:31 UTC
**Body**  Compa

**Author**  lilcurl.b (Instagram: 50311716672)
**Sent**  2022-09-19 20:12:59 UTC
**Body**  🔫🔫🔫🔫🔫

**Author**  lilcurl.b (Instagram: 50311716672)
**Sent**  2022-09-19 20:13:06 UTC
**Body**  You need them at a cheaper ticket or what

**Author**  lilcurl.b (Instagram: 50311716672)
**Sent**  2022-09-25 22:06:22 UTC
**Body**  🔫🔫
**Share**  **Date Created**  Unknown

*See id.*  On December 17, 2020, co-Defendant Taylor messaged Defendant, stating "Rd you know somebody got perks," to which Defendant responded, "How many."  *Id.* at 19.  Taylor then asked Defendant, "What kind."  *Id.*  The Government proffers that the quantity Taylor was seeking was dependent on the type of pills Defendant had available.  *Id.*  Defendant eventually responded, "I gotta c wat he got proll 5s or 10s," meaning, according to the Government, 5mg or 10mg of oxycodone pills.  *Id.*  Taylor stated that he wanted "6."  *Id.*

The Government also claims that Defendant received messages via social media from potential customers regarding the illicit pills.  For instance, on March 2, 2022, a social media user messaged Defendant, telling him that his "30s high as Shyt."  *Id.* at 18.  The Government proffers that this individual was "praising the quality" of Defendant's "M-30 fentanyl pills."  *Id.*  According

to the Government, Defendant then informed this individual that he sold pills at $4.50 each.  *Id.*



*Id.* at 19.  The Government alleges that the above interaction also indicates that Defendant knew at least some of the pills he was distributing contained fentanyl, as opposed to legitimate oxycodone.  *Id.* at 21–22.  Because oxycodone pills do not variate in quality, this alleged customer "praising" Defendant's pills means that the pills were counterfeit and Defendant was aware of it.  *Id.* at 22.

Finally, the Government claims that Defendant obtained the illicit pills by travelling to California.  *Id.* at 16.  The Government supports this claim by recounting various messages between Defendant and Valdez.  *See id.* at 16–17.  For instance, on September 16, 2022, Defendant asked Valdez to pick him up from the airport.  *Id.* at 17.



*Id.*  Earlier that year, on July 28, 2022, Valdez messaged Defendant, stating, "Pops when you come to get more I got you in a better ticket too."  *Id.*  According to the Government, Valdez was soliciting Defendant for "more sales of pills at a better price."  *Id.*  Moreover, the Government claims that financial records obtained during this investigation demonstrate approximately $4,300 in Apple payments from Defendant to Valdez.  *Id.*  In addition, flight records show that Defendant has travelled to Los Angeles, California approximately forty (40) times over the course of the alleged conspiracy.  *Id.*

## II.    LEGAL STANDARD

A defendant ordered detained by a magistrate judge may file "a motion for revocation or amendment of the order" with "the court having original jurisdiction over the offense." 18 U.S.C. § 3145(b).  The Court applies *de novo* review to the question and is "free to use in its analysis any evidence or reasons relied on by the magistrate judge, but it may also hear additional evidence and rely on its own reasons."  *United States v. Sheffield*, 799 F. Supp. 2d 18, 20 (D.D.C.

2011) (BAH) (quoting *United States v. Hanson*, 613 F. Supp. 2d 85, 88 (D.D.C. 2009) (PLF)). "The motion shall be determined promptly." 18 U.S.C. § 3145(b).

In our society, "liberty is the norm" and "detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Bail Reform Act permits pretrial detention in only "carefully defined circumstances." *United States v. Simpkins*, 826 F.2d 94, 95–96 (D.C. Cir. 1987). A detention hearing must be held only if a case involves any of an enumerated set of offenses, including an offense "for which a maximum term of imprisonment of ten years or more is prescribed in[, *inter alia*,] the Controlled Substances Act," 18 U.S.C. § 3142(f)(1)(C), or if the defendant poses a serious risk of flight or of trying to obstruct justice or threaten, injure, or intimidate a witness or juror, *id.* § 3142(f)(2)(A)–(B).

The question for the Court is whether any "condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." *Id.* § 3142(e)(1). "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'" *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019). In determining whether a defendant should be detained pending trial, the Court must consider "the available information" concerning four enumerated factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g).

"To justify detention on the basis of dangerousness, the government must prove by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure the safety of any other person and the community.'" *United States v. Munchel*, 991 F.3d 1273,

1279–80 (D.C. Cir. 2021) (quoting 18 U.S.C. § 3142(f)).  That standard requires the Government to establish that the defendant "poses a concrete, prospective threat to public safety" that cannot be sufficiently mitigated by release conditions.  *Id.* at 1280; *see also Salerno*, 481 U.S. at 751. "Detention cannot be based on a finding that defendant is unlikely to comply with conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise[,] the scope of detention would extend beyond the limits set by Congress." *Munchel*, 991 F.3d at 1283.  Detention based on risk of flight, on the other hand, requires the Government to prove by a preponderance of the evidence that there is no condition or combination of conditions that will assure the defendant's appearance as required.  *United States v. Vortis*, 785 F.2d 327, 328–29 (D.C. Cir. 1986).

### III.     DISCUSSION

The Court concludes that the evidence presented by the Government in its briefing requires Defendant Blalock's detention pending trial.

#### A.  Legal Principles

The Court shall begin by addressing the proper standard to apply at this stage of proceedings.   As explained above, Defendant has appealed his detention order pursuant to 18 U.S.C. § 3145(b).  Such an appeal is subject to *de novo* review, in which the Court must engage in a searching, "factbound inquiry" to determine the danger to the community and/or risk of flight. *United States v. Sabol*, 534 F. Supp. 3d 58, 69 (D.D.C. 2021) (EGS) (citing *Munchel*, 991 F.3d at 1283) (cleaned up).

In determining whether Defendant is a danger to the community or a flight risk, the Court considers the Section 3142(g) factors, including: (1) "the nature and circumstances of the offense charged"; (2) "the weight of the evidence"; (3) "the history and characteristics" of the defendant;

and (4) "the nature and seriousness of the danger to any person or the community that would be posed by the [defendant's] release."  18 U.S.C. § 3142(g).  With respect to the second factor—the weight of the evidence—the Court notes that this factor is a "common-sense consideration." *United States v. Blackson*, No. 23-cr-25, 2023 WL 1778194, at *10 (D.D.C. Feb. 6, 2023) (BAH). If, for instance, the evidence is "overwhelming, credible, helpful, and important to the government's case in chief," then there may be an increased risk that the defendant "will flee to avoid future court proceedings," and it may further "indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true."  *Id.* Conversely, if the evidence is "circumstantial, contradicted, or unreliable," then the defendant would have "less reason to duck court proceedings" and the evidence does not support the view that defendant is a danger to the community.  *Id.*

The Court shall consider these factors based upon the present record without holding an additional hearing.  *See Sheffield*, 799 F. Supp. 2d at 20 (permitting district court to use in its analysis the evidence relied on by the magistrate judge); *see also United States v. Anderson*, 384 F. Supp. 2d 32, 33–34 (D.D.C. 2005) (PLF) (taking into consideration the indictment, "the briefs and other papers submitted by the parties, the proceedings before [the magistrate judge], the [magistrate's] findings of fact and conclusions of law, and the evidence and proffers before [the court]").  Based on the current record, the Court concludes that clear and convincing evidence supports a finding that no condition or combination of conditions will "reasonably assure" the "safety of any other person and the community" or Defendant's appearance at trial.  Accordingly, the Court orders that Defendant shall remain detained pending trial.  *See* 18 U.S.C. § 3142(e)(1).

### B. Nature and Circumstances of the Offense Charged

Turning to the Section 3142(g) factors, the Court first considers the "nature and circumstances of the offense charged" including whether the offense involves "a controlled substance." 18 U.S.C. § 3142(g)(1). In this case, a rebuttable presumption of detention applies because Defendant has been charged by indictment with serious violations of the Controlled Substances Act. *See id.* § 3142(e)(3)(A); ECF No. 174 (operative indictment); *United States v. Brown*, 538 F. Supp. 3d 154, 165 (D.D.C. 2021) (RCL). Even the possession with intent to distribute "9.11 grams of fentanyl and .89 grams of powdered cocaine" triggers such a presumption. *Brown*, 538 F. Supp. 3d at 165–66. Here, a grand jury has found probable cause that Defendant was engaged in a conspiracy to distribute more than 400 grams of fentanyl that ran from August 2020 until the present day, and the Government has presented evidence that Defendant was a "prolific distributor of pills." *See* Gov't's Opp'n at 15–19. The Court must therefore presume that no condition or combination of conditions will reasonably assure Defendant's appearance as required or the safety of the community.

To rebut this presumption, Defendant must "offer some credible evidence" that he will not endanger the community or flee if released. *United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (GMH). The Court finds that Defendant has failed to do so here. He argues, for instance, that his charged offense "entails less intrinsic risk to the community than the other offenses listed in the [Bail Reform Act], such as crimes of violence, human trafficking, terrorism, and possession of firearms and explosives." Mot. at 2. Regardless of the other crimes listed in the statute, *see* 18 U.S.C. § 3142(e)(3), Congress has already determined that the offense Defendant is charged with requires the Court to apply a rebuttable presumption of detention, *see id.* § 3142(e)(3)(A). Noting that other crimes may "entail [more] intrinsic risk to the community"

does not prevent the rebuttable presumption from applying in this case.  Mot. at 2; *see also* 18 U.S.C. § 3142(e)(3)(A).  Furthermore, Defendant offers no evidence—let alone credible evidence—that he is not a danger to the community or a flight risk if release.  *See generally* Mot. In addition, the Government is alleging that Defendant was selling fentanyl pills, at least to an extent, "disguised as legitimate oxycodone."  Gov't's Opp'n at 21.

The Court concludes that the nature and circumstances of the offense weigh in favor of detention.  Defendant is charged with conspiring to distribute and possessing with intent to distribute 400 grams or more of a substance containing fentanyl, in violation of 21 U.S.C. §§ 841(a)(1), 846.  This charge carries a ten-year mandatory minimum sentence, with a maximum of life.  21 U.S.C. § 841(b)(1)(A)(vi).  As the Government puts it, "it is common knowledge that fentanyl kills," Gov't's Opp'n at 20; this investigation began with the overdose death of a D.C. resident who appears to have obtained her drugs through the member(s) of this conspiracy, *id.* at 3–4.  "Moreover, this is not the case of an individual seller working alone."  *Brown*, 538 F. Supp. 3d at 167.  The Government alleges not just a conspiracy among the defendants in this action, but vast distribution across the United States.  Therefore, Defendant's "alleged participation in the conspiracy charged thus strongly suggests that, if released, he would have the means to purchase and distribute narcotics and thereby endanger [not just] the D.C. community," but also communities throughout the United States.  *Id.*

Furthermore, the additional defendants in the third superseding indictment have been ordered detained pending trial as well.  *See, e.g.*, ECF No. 167; ECF No. 182 (sealed); ECF No. 184; No. 191; ECF No. 231; ECF No. 255.  In each of these cases, there was sufficient evidence of fentanyl drug trafficking to warrant and support their detention pending trial. Releasing this defendant, who is a "prolific" fentanyl trafficker in the District of Columbia, would

be contrary to the other detention orders in effect.  Therefore, the first factor weighs in favor of detention.

### C.  Weight of the Evidence

The weight of the evidence against Defendant also favors continued pretrial detention.  The Government presents communications between Defendant and other co-defendants in this case, including Defendants Valdez and Taylor, substantiating its claim that Defendant did in fact participate in this alleged conspiracy by dealing with illicit drugs.  *See* Gov't's Opp'n at 15-19. The Government also recounts communications between Defendant and another social media account, indicating that Defendant would obtain the pills from a supplier—such as Defendant Valdez—and sell the pills to a customer.  *Id.* at 18.

In all, the Court finds that the weight of this evidence is strong.  *See Brown*, 538 F. Supp. 3d at 168–69.  Given the evidence to date, this factor weighs in favor of detention.  *See United States v. Brockhoff*, 590 F. Supp. 3d 295, 304 (D.D.C. 2022) (CKK); *see also Blackson*, 2023 WL 1778194, at *10.

### D.  History and Characteristics of the Defendant

Under the third Section 3142(g) factor, the Court must consider a defendant's "history and characteristics," including his "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history related to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings."  18 U.S.C. § 3142(g)(3).

Given Defendant's serious criminal record, this favor also weighs in favor of detention pending trial.  According to his Pretrial Services Report, Defendant has 21 prior arrests, 5 prior convictions, and 5 bench warrants.  *See* Pretrial Services Report ("PSR"), ECF No. 263.  One prior

conviction involved Attempted Assault with a Dangerous Weapon (Firearm), *id.* at 3, and another conviction involved Second Degree Assault, Theft (less than $100), Resisting Arrest, and Failing to Obey, *id.* at 4.  Defendant was also convicted for possession of a controlled substance (not marijuana) in 2017.  *Id.*  The Government argues that Defendant's criminal history "reflects a wanton disregard for the criminal justice system," and that the conduct alleged against him in the operative indictment is "not out of the ordinary for him" given his 2017 conviction involving a controlled substance.  Gov't's Opp'n at 23.

On the other hand, Defendant argues that he does not have a "substantial history of failing to appear for court," as only one of the five bench warrants was executed, with the remaining four having been quashed.  Mot. at 2–3.  Defendant further argues that only one of his prior convictions is of concern (Attempted Assault with a Dangerous Weapon).  *Id.* at 3.  The Court's concern is not alleviated.  Bench warrants typically are issued when an individual fails to comply with a court order or fails to appear in court.  Even without considering his bench warrants, Defendant appears to have a serious criminal history, with numerous arrests and five convictions.  *See* PSR, ECF No. 260.  In all, the Court finds that this factor weighs in favor of detention.

### E.  The Nature and Seriousness of the Danger Posed by Defendant's Release

The final factor that the Court must consider is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g)(4).  Conspiring to distribute fentanyl presumptively renders a defendant a serious danger to the community.  *See Brown*, 538 F. Supp. 3d at 170; *cf. also United States v. Bethea*, 763 F. Supp. 2d 50, 54 (D.D.C. 2011) (RCL) (narcotics trafficking generally).  Particularly so given the vast amount of drugs at issue here.  More generally, "the lethality of fentanyl and scourge of . . . opioids on this community [and communities around the country] further demonstrate the serious

danger Defendant's release could pose." *United States v. Bolivar*, 455 F. Supp. 3d 1165, 1171 (D.N.M. 2020).  And, the significant statutory penalties Defendant faces provide him with a strong incentive to flee.

Defendant argues that home detention and electronic monitoring would "adequately protect[] the community" and alleviate any concerns the Court may have that Defendant "would flee or break the law."  Mot. at 3.  Defendant requests that he be restricted to the home of his mother, who resides in the District, because she "needs her soon" given her medical conditions. *Id.*  Defendant explains that he would take care of his mother, and, because his mother cannot work, his mother would "always be present to watch over" him.  *Id.*

The Government, however, maintains that Defendant's custodian should not be "transformed into [Defendant's] jailer," particularly considering her medical conditions.  Gov't's Opp'n at 24.  Furthermore, his mother should not be expected to report any infractions of Defendant's release conditions, *id.*, as "[she] needs her son as much as he needs her," Mot. at 3.

While the Court sympathizes with Defendant's situation, the Court must nonetheless reasonably ensure the safety of any other person and the community.  18 U.S.C. § 3142(g).  Here, the Government presented strong evidence indicating that Defendant knowingly and intentionally trafficked counterfeit pills.  *See generally* Gov't's Opp'n.  As such, the Court's concern regarding the safety of the community, or Defendant's appearance at trial, is not alleviated.  Therefore, this factor also weighs in favor of detention.

\*     \*     \*

All in all, even if Defendant could rebut the presumption of detention, the Court finds that no set of conditions can address the threat of danger he poses to the community or mitigate his risk of flight.  Notably, Defendant's PSR states: "No condition or combination of conditions can

reasonably assure the defendant's appearance or safety to the community." PSR, ECF No. 263, at 1.  The Government has shown that Defendant has a strong incentive to flee given the seriousness of the charges, the apparent weight of the evidence, and the substantial statutory penalties he is facing.  Therefore, the Court concludes that the Section 3142(g) factors require pretrial detention.

## IV.    CONCLUSION

The record establishes, by clear and convincing evidence, that no condition or combination of conditions can be imposed that would reasonably assure the safety of the community or Defendant's presence at trial if he was released pending trial.  18 U.S.C. § 3142(e)(1).  Therefore, the Court **DENIES** Defendant's [257] Motion for Review of Magistrate Judge's Detention Order.

**Dated:** March 4, 2024

_/s/_____
COLLEEN KOLLAR-KOTELLY
United States District Judge

15