# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KARON OLUFEMI BLALOCK,<br><br>Defendant. | Criminal Action No. 23-073-15 (CKK) |

## MEMORANDUM OPINION & ORDER
(June 25, 2026)

In this case, the Government charged Karon Olufemi Blalock with conspiracy to distribute and possess with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl, conspiracy to commit bank and wire fraud, and conspiracy to launder monetary instruments. *See* Sixth Superseding Indictment, Dkt. No. 647. Mr. Blalock entered into a written agreement with the Government to plead guilty to a single drug conspiracy count, and the Court accepted his proposed plea at a Rule 11 hearing on October 16, 2025. *See* Tr. of Plea Agreement Hr'g, Dkt. No. 793. Although Mr. Blalock is represented by appointed counsel in this action, the Court granted him leave to file a *pro se* [800] Motion for a Drug Quantity Hearing. The Government opposes Mr. Blalock's Motion. *See* Gov't's Opp'n, Dkt. No. 809. Upon consideration of the parties' submissions,[1] the relevant legal authority, and the entire record, the Court shall **DENY** Mr. Blalock's [800] Motion.

---

[1] The Court's consideration has focused on the following documents, including the attachments and exhibits thereto:
- Mr. Blalock's *pro se* Motion for a Drug Quantity Hearing ("Def.'s Mot."), Dkt. No. 800;
- the Government's Opposition to Mr. Blalock's *pro se* Motion ("Gov't's Opp'n"), Dkt. No. 809;
- the parties' written Plea Agreement, Dkt. No. 757; and
- the Government's Submission of Elements of Offense and Proffer of Evidence in Support of Defendant's Plea of Guilty ("Gov't's Proffer"), Dkt. No. 756.

In an exercise of its discretion, the Court concludes that oral argument is not necessary to the resolution of the issues pending before the Court. *See* LCvR 7(f).

1

## I. BACKGROUND

Mr. Blalock and 25 co-defendants are charged in this case with conspiring to distribute and possesses with intent to distribute a mixture and substance containing a detectable amount of fentanyl. *See* Sixth Superseding Indictment, Dkt. No. 647. The Government alleges that Mr. Blalock joined this conspiracy in August 2020 and that his role was to travel to Southern California to purchase fentanyl-laced counterfeit oxycodone pills from a Los Angeles-based drug trafficker and bring those pills back to the District of Columbia. *See id.*; Gov't's Proffer at 3. The Government has proffered that the overall purpose of the charged conspiracy was "to distribute fentanyl from Southern California to destinations throughout the United States, including to the District of Columbia." Gov't's Proffer at 3.

On October 13, 2025, Mr. Blalock signed a written plea agreement with the Government in which he agreed to plead guilty to one count of conspiracy to distribute and possess with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl. Plea Agreement, Dkt. No. 757. This written plea agreement states, in relevant part:

> Your client [Mr. Blalock] agrees and will acknowledge at the time of the plea of guilty to the offense stated above that, pursuant to U.S.S.G. § 1B1.3, *your client is accountable for 1.2–4 kilograms of a mixture and substance containing a detectable amount of fentanyl*, which quantity represents the total amount involved in your client's relevant criminal conduct, including amounts your client distributed and possessed with intent to distribute and amounts distributed or possessed with intent to distribute by co-conspirators of your client pursuant to jointly undertaken criminal activity that was reasonably foreseeable by your client and within the scope of your client's conspiratorial agreement.

*Id.* at 3–4 (emphasis added).

As part of his plea agreement with the Government, Mr. Blalock signed a written copy of the Government's proffer of evidence in support of his plea. *See* Gov't's Proffer, Dkt. No. 756. By signing this document, Mr. Blalock affirmed that he "fully [understood] this proffer and

agree[d] to it without reservation." Gov't's Proffer at 6. The first numbered paragraph of that

proffer states:

> From beginning in or about August 2020 to November 9, 2023, Defendant Karon Olufemi Blalock conspired to, and did in fact, distribute and possess with intent to distribute a mixture and substance containing a detectable amount of fentanyl, a Schedule II narcotic drug-controlled substance. *The amount of that mixture, including the reasonably foreseeable conduct of all the members of the conspiracy known to the Defendant, was 1.2–4 kilograms.*

*Id.* at 3 (emphasis added).

The parties' written agreement states that, based on the drug quantity reflected in the

agreement, the base offense level for the offense to which Mr. Blalock is agreeing to plead guilty

is 32. Plea Agreement at 4 (citing under U.S.S.G. § 2D1.1(c)(4)). The agreement also states that,

after a three-level point reduction for acceptance of responsibility under U.S.S.G. § 3E1.1, the

estimated offense level "will be at least 29." *Id.* Based on Mr. Blalock's criminal history, the

agreement states that his estimated sentencing guidelines range is 108 to 135 months, subject to a

mandatory minimum sentence of 120 months. *Id.* at 1, 5. The parties further agree, pursuant to

Federal Rule of Criminal Procedure 11(c)(1)(C), that a sentence range of 128 to 135 months of

imprisonment, followed by a five-year term of supervised release, is the appropriate sentence in

this case. *Id.* at 2.

At a Rule 11 change-of-plea hearing in open court on October 16, 2025, the Court reviewed

the proposed plea agreement with Mr. Blalock, in the presence of his counsel. *See* Tr. of Plea

Agreement Hr'g ("Tr."), Dkt. No. 793. During this hearing, the Court reviewed each paragraph

of the Government's proffer with Mr. Blalock on the record, including the paragraph regarding the

drug quantity. *See id.* at 17:20–33:18. The Court held an extended colloquy with Mr. Blalock

regarding the drug quantity, during which Mr. Blalock initially stated that he "thought the amount

was 400 grams to 1.2 kilograms," but after consulting with counsel, ultimately agreed with the

Government's proffer that the relevant amount was 1.2 kilograms to 4 kilograms.  *Id.* at 18:19–20, 33:15–18.

At the conclusion of the Rule 11 hearing, the Court found that Mr. Blalock's acceptance of the plea agreement was knowing and voluntary, and it accepted Mr. Blalock's plea of guilty to one count of conspiracy to distribute and possess with intent to distribute 400 grams or more of a mixture and substance containing a detectable amount of fentanyl.  Tr. at 78:5–23.  The Court then scheduled a sentencing hearing to take place in March 2026.  *Id.* at 82:3–5.

On January 20, 2026, the Court received a *pro se* motion from Mr. Blalock requesting a drug quantity hearing at which Mr. Blalock could contest the quantity of drugs for which he would be held responsible at the time of sentencing.  Def.'s Mot., Dkt. No. 800.  In his motion, Mr. Blalock acknowledges that "there was over 12 [kilograms] seized in the conspiracy" in which he is charged.  *Id.* at 1.  He also acknowledges that the Government is "holding [him] responsible for 1.2 [kilograms] to 4 [kilograms]," which he estimates is "about 12,000–40,000 pills of fentanyl." *Id.*  However, he argues that this quantity was not reasonably foreseeable to him, noting that no drugs were seized from his person and that the Government did not proffer specific evidence that he "agreed, purchased, or distributed that amount."  *Id.*

The Court provided a copy of this *pro se* motion to Mr. Blalock's counsel of record and requested an *ex parte* status report, which counsel provided.  In this status report, counsel advised that Mr. Blalock wanted to withdraw his guilty plea.  Counsel also advised the Court that the basis for any motion to withdraw would require the appointment of new counsel.  Accordingly, the Court stayed the sentencing deadlines in this case and appointed independent counsel to consult with Mr. Blalock and advise him about how he intended to proceed.  Order, Dkt. No. 797.  The Court also

granted Mr. Blalock leave to file his *pro se* motion, which was then docketed. *Id.*; *see* Def.'s Mot., Dkt. No. 800.

Mr. Blalock's independent counsel initially reported that Mr. Blalock wanted to move forward with new counsel and withdraw his guilty plea. Status Report, Dkt. No. 808. However, after further discussions with Mr. Blalock, counsel reported that he had decided to proceed with sentencing under his existing plea agreement. After confirming Mr. Blalock's intended direction with counsel, the Court called for a response to Mr. Blalock's pending *pro se* motion, which the Government timely filed. *See* Minute Order (May 1, 2026). Mr. Blalock did not file a reply. *See id.* (setting reply deadline of June 12, 2026).

Mr. Blalock's motion is now ripe for decision.

## II. LEGAL STANDARD

"The base offense level for drug crimes depends on 'the quantity of drugs involved in the offense.'" *United States v. Johnson*, 64 F.4th 1348, 1351 (D.C. Cir. 2023) (quoting *United States v. Miller*, 890 F.3d 317, 329 (D.C. Cir. 2018)). To establish the drug quantity for which a defendant is responsible under the relevant Sentencing Guidelines, "[t]he government bears the burden of proving the amount of drugs reasonably foreseeable to the defendant by a preponderance of the evidence." *United States v. Booze*, 108 F.3d 378, 381 (D.C. Cir. 1997). Once the Government has proffered evidence, the burden shifts to the defense "to proffer evidence of its own, placing factual issues in dispute, or to point out that the government's proffers are deficient or insufficiently comprehensive." *Id.* "Where the defense offers no evidence to refute the factual assertions by the government, the district court may adopt those facts without further inquiry." *Id.* (citing *United States v. Pinnick*, 47 F.3d 434, 437 (D.C. Cir. 1995)).

When evaluating whether the Government has carried its burden of proving a fact relevant to sentencing, the Court may consider the stipulations of fact contained in a plea agreement, the

oral representations of the Government at a Rule 11 plea hearing, and the Defendant's oral agreement with those representations. *See United States v. Conyers*, 132 F.3d 1482, 1997 WL 661799 at *1–2 (D.C. Cir. 1997) (per curiam) (unpublished table decision); *see also United States v. Emor*, 850 F. Supp. 2d 176, 203 (D.D.C. 2012) (PLF) (applying analogous principle in the restitution context).

### III. ANALYSIS

In this case, Mr. Blalock entered into a plea agreement in which he agreed three separate times that he would be held responsible for a specific drug quantity based both on his own conduct and the reasonably foreseeable conduct of other members of the charged conspiracy who were known to him. He agreed to that quantity once when he signed the plea agreement letter itself. Plea Agreement at 3–4, 12. He agreed a second time when he signed the Government's factual proffer, affirming that he "agree[d] to it without reservation." Gov't's Proffer at 3, 6. And he agreed to the quantity a third time on the record during his Rule 11 plea hearing, after an extended colloquy with the Court and multiple opportunities to consult with counsel. *See* Tr. at 33:15–18. The Court found that Mr. Blalock's acceptance of agreement was knowing and voluntary. *Id.* at 78:14–18. Although Mr. Blalock later considered withdrawing from this plea agreement, after consulting extensively with both his current counsel of record and independent appointed counsel, he has elected not to do so.

Based on the Government's representations and proffers in Mr. Blalock's case, as well as those made in connection with the cases of many of Mr. Blalock's 25 co-defendants, the Court is satisfied that there is a sound factual basis for the drug quantity reflected in the parties' agreement and that this quantity is the amount for which Mr. Blalock may be held responsible at sentencing.

For example, in the cases of several of Mr. Blalock's similarly situated co-defendants, the Government proffered, and Mr. Blalock's co-defendants agreed, that the drug quantity involved in

the reasonably foreseeable conduct of all the members of the conspiracy known to them was more—and often considerably more—than 1.2 kilograms. *See, e.g.*, Dkt. No. 731 at 4 (1.2 to 4 kilograms); Dkt. No. 225 at 3 (4 to 12 kilograms); Dkt. No. 264 at 3 (4 to 12 kilograms); Dkt. No. 412 at 3 (4 to 12 kilograms); Dkt. No. 269 at 3 (12 to 36 kilograms). Some of these co-defendants agreed to factual proffers in which the Government asserted that it had actually seized thousands of counterfeit pills. *See, e.g.*, Dkt. No. 731 at 5 (more than 1,000 pills weighing approximately 122 grams in aggregate); Dkt. No. 269 at 4 (more than 70,000 pills weighing approximately 8.2 kilograms in aggregate). Consistent with these proffers, Mr. Blalock himself admits that "there was over 12 [kilograms] seized in the conspiracy" in which he is charged. *See* Def.'s Mot. at 1.

The Government's proffers in each of these co-defendants' plea agreements indicate that these co-defendants played roles very similar to that of Mr. Blalock, during the period in which Mr. Blalock was a member of the conspiracy: each traveled to Southern California in order to purchase fentanyl-laced counterfeit oxycodone pills from a Los Angeles-based co-conspirator, then brought those pills back to the District of Columbia. *Compare* Dkt. No. 756 (proffer in Mr. Blalock's case), *with* Dkt. No. 225 at 3, Dkt. No. 264 at 3, Dkt. No. 269 at 3, Dkt. No. 412 at 3, *and* Dkt. No. 731 at 4; *see United States v. Burnett*, 827 F.3d 1108, 1121 (D.C. Cir. 2016) (noting that "when calculating a sentence, a district court may not attribute to a defendant conduct that occurred *before* he joined the conspiracy").

Based on these proffers and the agreement of Mr. Blalock's co-defendants, the Court finds that the Government has carried its burden. Mr. Blalock has agreed that his role in the charged conspiracy was to purchase pills from a Los Angeles-based drug trafficker and bring them to this District. *See* Gov't's Proffer at 3, 6. The Government has shown, by at least a preponderance, that the reasonably foreseeable conduct of this trafficker, who was known to Mr. Blalock, included

7

conspiracy to distribute and possess with intent to distribute at least 1.2 kilograms of a mixture and substance containing a detectable amount of fentanyl. *See United States v. Bell*, 795 F.3d 88, 106 (D.C. Cir. 2015) (affirming sentence based on the drug quantity associated with the reasonably foreseeable conduct of all conspirators known to the defendant). This reasonably foreseeable conduct occurred after Mr. Blalock joined the conspiracy in August 2020 and was within the scope of the conspiratorial agreement for which Mr. Blalock has accepted responsibility: a conspiracy "to distribute fentanyl from Southern California to destinations throughout the United States, including to the District of Columbia." *See* Gov't's Proffer at 3, 6; *United States v. Tabron*, 437 F.3d 63, 66 (D.C. Cir. 2006) (noting that district courts must "make explicit findings as to the scope of a defendant's conspiratorial agreement before holding him responsible for a co-conspirator's reasonably foreseeable acts"); *Burnett*, 827 F.3d at 1121 (noting that a defendant may not be held responsible for a co-conspirator's conduct that occurred before he joined the conspiracy).

Because there is ample evidence in the record supporting the drug quantity reflected in the parties' plea agreement, because Mr. Blalock knowingly and voluntarily admitted to that drug quantity as an integral part of his acceptance of the agreement, and because he has not withdrawn from the agreement, the Court concludes that there is no basis on the present record for a drug quantity hearing. Accordingly, the Court shall **DENY** Mr. Blalock's motion.

## IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Mr. Blalock's [800] Motion for a Drug Quantity Hearing is **DENIED**. As previously ordered, the parties shall appear for a sentencing hearing at **2:00 p.m. on June 29, 2026**.

**SO ORDERED.**

**Dated:** June 25, 2026

COLLEEN KOLLAR-KOTELLY
United States District Judge